## Case No. 6,460.

### HICKS v. FITZSIMMONS.

[1 Wash. C. C. 279.][1]

Circuit Court, D. Pennsylvania.   April Term, 1805.

INSURANCE—PERILS INSURED AGAINST—EMBEZZLEMENT—COMPETENCY OF WITNESS.

1. Action to recover the amount of three bags of Spanish dollars, which had been taken from the vessel on the voyage, during which she was boarded by the crew of a privateer.—The plaintiff must prove the loss to have occurred, by some one of the perils insured against; but, a loss by embezzlement of the crew, is not included in the policy.

2. The nature of the interest, which excludes the examination of a person, as a witness; and, an examination of the law, in reference to the interest, which excludes a witness.

[See note at end of case.]

This was an action on the case against the defendant, president of the Delaware Insurance Company, on a policy, dated the 6th of December, 1803, on 5000 dollars, in specie, at and from New-York, to the city of Santo Domingo; with liberty to proceed to any other port, Cape François excepted, in the island, and back to New-York. The policy was in the usual form. The plaintiff was owner of the vessel and cargo; the captain was the consignee. The bill of lading was for 17 bags, containing in all 5000 silver dollars. To prove the loss, the plaintiff offered the captain as a witness. He was objected to by Mr. Condy, for the defendant; who stated, that the captain was interested to fix the loss on the underwriter, so as to avoid the personal responsibility, which the bill of lading attached to him. He cited Peake, Ev. 113; 4 Term R. 589; Ld. Raym. 1007; Abb. Shipp. (Am. Ed.) 105.

Mr. Hallowell relied on the case of Ruan v. Gardner [Case No. 12,100], in this court. The objection was overruled.[2]

The captain stated, that he, at the request of the plaintiff, put two of the bags, containing six hundred dollars, in his chest, in the cabin, and the other bags in the hold of the vessel, under the ballast; that he was brought to, near St. Domingo, by a French privateer, and ordered, with his papers, on board; that, whilst he was there, some of the privateersmen went on board his ship, returned two or three times in the boat, to the privateer, with articles from the vessel; after which, he was permitted to return to his vessel, and proceed on his voyage. On his return, he found the two bags of dollars taken from his chest. St. Domingo being blockaded, he went to Jamaica; staid two or three days; and, while there, on examination, he found one of the 15 bags in the hold gone. The evidence was of such a nature, as to leave great room to suspect, that the third bag was embezzled by the crew; but, nothing positive appeared to show whether it had been taken by the crew, or by the French.

WASHINGTON, Circuit Justice, charged the jury that it was necessary for the plaintiff to prove his loss to have arisen from some of the perils mentioned in the policy, and in the way stated in the declaration. That, as to the third bag of money, it was for the jury to say, by what means it was taken. If by the French, the plaintiff was

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

2 [See note at end of case.]

entitled to recover the amount, as well as of the other two. But, if they thought it had been taken by the crew, the plaintiff could not recover for it in this action; since the loss, stated in the declaration, was attributed to French spoliation, and not to barratry.

The jury found the amount of the two bags only, with interest from the demand, or so many days after, as the policy mentions.

NOTE. The general rule is, that the objection to a witness, on the ground of interest, goes to his credit, and not to his competency, unless he be directly interested; that is, may be immediately benefited or injured, by the event of the suit; or, unless the verdict to be obtained by his evidence, or given against it, will be evidence for or against him, in another action, in which he may be a party. Any smaller degree of interest, as that he may possibly be liable to an action, in a certain event; or, that the verdict may influence the jury in his own case, being similar; does not affect his competency. The admission of a person, immediately interested in the event of the cause, nay, party to it, from necessity; as the person robbed, in an action against the hundred; the defendant's wife; oath made on an indictment for robbery, in an action against the husband for a malicious prosecution; are exceptions to the general rule. So, likewise, persons who become interested in the common course of business, and who alone can know the fact; as a servant, who, in the way of business, delivers out goods, though the evidence, whereby he charges the defendant, exonerates himself from his liability to his master. Peake, Ev. 93–101. So in the cases of Martin v. Horrell, 1 Strange, 647, and Salk. 280; depend on the same principle. If not in the usual course of business, he must be released. Cowp. 199. So the objection, on account of interest, may be taken out of the general rule, by a counter interest in him; as, where his interest, in the event of the cause supported by his evidence, is counteracted by an equal or greater interest, that it should be decided otherwise. Peake, Ev. 102. So, if the witness stands indifferent, in point of interest, between the parties; being liable to pay to one or the other; as, if in a suit between A and B, for the recovery of money, paid by A to C, for the use of B, C may be a witness, to prove he received it as agent for B. So the acceptor of a bill of exchange, in an action against the drawer, to prove that he had no effects. 7 Term R. 480, 481, note. Peake, Ev. 102. But, in an action against the master, for the negligence of the servant, the servant is not a witness for his master, unless he is released. For, though he is equally liable to the master, in case of a recovery against him, and to the injured person, if he fail; still, as the master in a former case, may, in the action against the servant, use the verdict to prove the quantum of the damages, though not the facts; this is an interest which renders him incompetent. 2 Ld. Raym. 1411. 4 Term R. 589. Green v. New River Co. [4 Term R. 589]. In an action on a policy on goods, the master and owner was held incompetent, to prove the ship seaworthy, without a release by plaintiff; because, though this verdict could not be read in evidence, in any action, by or against the owner; yet, the witness, by his testimony, seems to exonerate himself from the action of the owner of the goods, for the want of seaworthiness of the vessel. Peake, 84. So, if the loss stated, be barratry of the master, he cannot be a witness for the defendant, to prove the deviation made with consent of the owners, unless released by defendant; for, if plaintiff succeeds on the barratry of the master, he is answerable to the underwriter. 1 Esp. 339. For, if the underwriters suffer by the fault of the master, they may maintain an action ex delicto, against the person who subjected them to it.

The principle of these cases, seems to militate very strongly against the decision in Ruan v. Gardner [supra], and the present. In the case of actions against the master, for injury suffered by neglect of the servant, the incompetency of the servant to give evidence for the master, without a release, must proceed on the ground, that the success of the master, exonerates the servant from his action; and the verdict, besides, would be evidence of the quantum of injury the master had sustained. It is true, the servant is liable to the action of the same plaintiff; but, he has an interest to get rid of one action, particularly when the verdict may be read against him. This is not like the case of Ilderton v. Atkinson, 7 Term R. 480, or Evans v. Williams, Id. 481, note, or Staples v. Okines, 1 Esp. 332: because, in all those cases, the witness's liability to one of the parties, was not disputed; and, it was of no consequence to him, to which he paid, or which of the parties succeeded. In the cases of Rotheroe v. Elton, Peake, 117, and Bird v. Thompson, 1 Esp. 339, the liability of the master was disputed. His evidence was to exonerate himself from the charge of barratry, and having an incompetent vessel; and, consequently, from the claim of the owner of the goods in one case, if he should fail on account of the unworthiness of the vessel, and of the underwriter in the other, for the barratry, in case the underwriter should be made liable. So in the case in the text. The master was liable, by his bill of lading, to the owner of the 5000 dollars; but, exonerated himself entirely, by proving a loss by capture. It is true, he might be sued by the underwriter, if he was guilty of embezzlement; but not under equal circumstances with the other case; for, I presume, the underwriter would be bound to prove the barratry: whereas, the owner might rely on the bill of lading; and put it upon the master to prove his excuse. Besides, he would be also liable in the cases before mentioned. I doubt the solidity of the reason given by Judge Peters; because, if the plaintiff had misconceived his action by stating a loss by capture, I do not see that this would preclude him from suing the master, for a loss by a different cause.